FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BYRON S.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:17-CV-00408-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383f. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

# I.    JURISDICTION

Plaintiff filed his application for Supplemental Security Income benefits on January 24, 2013. AR 17, 318-23. His alleged onset date of disability is January 24, 2013. AR 17, 319. Plaintiff's application was initially denied on May 7, 2013, AR 192-95, and on reconsideration on July 26, 2013, AR 199-206.

Administrative Law Judge ("ALJ") Lori L. Freund held a hearing on July 13, 2015, AR 17, 51, 53, however, the hearing was continued in order to obtain additional medical evidence. A second hearing was held on March 14, 2016. AR 17, 111-12. The second hearing was also continued in order to obtain additional medical evidence. A third hearing was held on September 1, 2016. AR 17, 147. On September 16, 2016, the ALJ issued a decision finding Plaintiff ineligible for benefits. AR 17-32. The Appeals Council denied Plaintiff's request for review on October 26, 2017, AR 1-6, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on December 14, 2017. ECF No. 5. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.    SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant Gallo in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104,1111 (9th Cir. 2012). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.   STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 44 years old on the date the application was filed. AR 30. He has at least a high school education. *Id*. Plaintiff is able to communicate in English. *Id*. Plaintiff has a history of drug and alcohol

abuse. AR 27-28, 580, 807. Plaintiff has past relevant work as a metal fabricator, kitchen helper, and fish processor. AR 30.

## V. THE ALJ'S FINDINGS

The ALJ determined that Plaintiff has not been under a disability within the meaning of the Act since January 24, 2013, the date the application was filed. AR 17, 31.

**At step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the filing of his application on January 24, 2013 (citing 20 C.F.R. § 416.971 *et seq.*). AR 19.

**At step two**, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis of the right knee; history of fracture to the left fibula; degenerative disc disease of the lumbar spine; osteoarthritis right elbow; bilateral rotator cuff tears, status-post left ankle fracture; borderline intellectual functioning; personality disorder, not otherwise specified; adjustment disorder with mixed anxiety and depressed mood; and a history of polysubstance abuse (citing 20 C.F.R. § 416.920(c)). *Id*.

At **step three**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 (citing 20 C.F.R. §§§ 416. 920(d), 416.925 and 416.926). AR 21.

1     **At step four**, the ALJ found that Plaintiff has the residual functional

2     capacity to: perform light work as defined in 20 C.F.R. § 416. 967(b) except that

3     he can lift/carry 20 pounds occasionally and up to 10 pounds frequently;

4     stand/walk 30 minutes at a time for a total of six hours in an eight-hour workday;

5     sit for six hours in an eight-hour workday; he is limited to frequent operation of

6     foot controls bilaterally; he cannot climb ladders, ropes or scaffolds; he can

7     frequently climb ramps and stairs; he can frequently stoop and kneel; he can

8     occasionally kneel, crouch and crawl; he cannot reach overhead bilaterally but he

9     can frequently reach in all other directions; he is limited to frequent handling,

10    fingering, and feeling bilaterally; he must avoid all exposure to extreme cold,

11    excessive vibration and unprotected heights; he must avoid concentrated exposure

12    to wetness, humidity, hazardous machinery, operational control of moving

13    machinery and airborne irritants such as fumes, odors, dust, gases, etc.; he is

14    limited to simple repetitive tasks; superficial interaction with the public; occasional

15    interaction with coworkers and supervisors, with no tandem tasks. AR 23.

16    The ALJ determined that Plaintiff was unable to perform any past relevant

17    work. AR 30.

18    **At step five**, the ALJ found that in light of Plaintiff's age, education, work

19    experience, and residual functional capacity, there are jobs that exist in significant

20

numbers in the national economy that he can perform. AR 30. These include, mail clerk, routing clerk, and inspector/hand packager. AR 31.

## VI.    ISSUES FOR REVIEW

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) Improperly assessing Plaintiff's credibility; (2) improperly assessing Plaintiff's residual functional capacities; (3) posing an incomplete hypothetical question to the vocational expert; and (4) improperly finding Plaintiff to be capable of substantial gainful activity at Step Five of the Sequential Evaluation Process.

## VII.   DISCUSSION

### A. The ALJ Properly Discounted Plaintiff's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 24. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 24-28.

### 1. The ALJ properly discredited Plaintiff's subjective complaints due to evidence of drug seeking behavior.

First, the ALJ noted Plaintiff's history of misleading statements and visits to medical providers in order to obtain pain medications. AR 27-28. *See Smolen,* 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying").

Plaintiff has a history of polysubstance abuse, AR 27-28, 580, 807, and there are several notations in the record regarding Plaintiff's drug seeking behavior. AR 27-28, 479, 504, 529, 787, 792, 810. For example, on several occasions Plaintiff requested to refill his pain medication early. AR 27, 504, 525. There are also multiple instances in the record in which Plaintiff failed to disclose prior pain subscriptions to emergency room staff. AR 27, 479, 525. On July 2, 2013, an emergency room provider noted Plaintiff's drug seeking behavior and misuse of emergency room care. AR 525. On July 10, 2015, another examining physician, Dr. Racht, noted that Plaintiff demonstrated "significant drug abuse behavior."[1] AR 27, 810. An ALJ may discredit a claimant when there is a likelihood that the claimant was exaggerating complaints of physical pain in order to feed his or her addiction to a prescription medication. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

There is substantial evidence in the record documenting Plaintiff's drug seeking behavior. As such, the ALJ properly discredited Plaintiff's subjective pain complaints based on Plaintiff's drug seeking behavior.

### 2. The ALJ properly discredited Plaintiff's subjective complaints due to inconsistencies with the medical evidence.

The ALJ also noted multiple inconsistencies between Plaintiff's subjective

[1] The Court notes that in his Motion, Plaintiff asserts that "no treating nor examining providers challenged Plaintiff's credibility." ECF No. 13 at 14. This assertion is contradicted by Dr. Racht's notation regarding Plaintiff's significant drug abuse behavior. AR 810.

complaints and the medical evidence on record. AR 24-28. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

### a. The medical evidence does not support the level of physical impairment claimed by Plaintiff.

Plaintiff's subjective complaints regarding his physical limitations and pain are inconsistent with the medical evidence on record. AR 24-25, 425, 485, 494, 522, 728. For example, Plaintiff alleges disabling knee pain in his right knee, however, x-rays of his right knee showed only mild osteoarthritis, AR 24, 429, and physical examination of the knee revealed normal alignment, normal strength, no swelling or effusion, and good range. AR 24, 524, 549, 652-53. Further, Plaintiff did not report any swelling, popping or sense of instability in his right knee. AR 24, 424-26, 429, 494.

With regard to Plaintiff's alleged shoulder pain ALJ acknowledged that Plaintiff does suffer from bilateral rotator cuff tears. AR 24. However, in December 2011 and May 2013, Plaintiff presented largely intact range of motion of the shoulders, with some limitations due to subjective pain complaints. AR 24, 494, 522.

As for Plaintiff's allegations of disabling back pain, the ALJ noted that while Plaintiff did in fact suffer from lumbar degenerative disc disease, physical examinations of Plaintiff revealed only mild to occasionally moderate findings. AR 25. During musculoskeletal examinations the Plaintiff demonstrated normal gait and station, normal strength and tone of the lumbar spine, no spasm, little to no tenderness, normal strength in lower extremities, normal sensation and normal reflexes. AR 25, 425, 485, 494, 522, 549, 561, 653, 728, 732, 744, 766, 775, 860.

In 2013, Plaintiff fractured his left fibula. AR 20, 664-67, 801. Despite Plaintiff's allegations of continued ankle pain and limitations, records show that Plaintiff experienced decreased pain and improved functional abilities post-surgery. *Id.*; s*ee Brown v. Barnhart,* 390 F.3d 535, 540 (9th Cir. 2004) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling.). Records indicate that he failed to attend follow-up appointments after his ankle surgery. AR 28, 586, 710 745, 999. Further, Plaintiff reported being able to walk up to one mile if he has his medication. AR 24-25, 355-59, 374-79.

There is substantial medical evidence to support the ALJ's finding that Plaintiff's physical impairments were not as disabling as Plaintiff claims. The Court finds no legal error in the ALJ's conclusion regarding Plaintiff's credibility based on these inconsistencies.

*//*

### b. The medical evidence does not support the level of mental impairment claimed by Plaintiff.

Plaintiff also alleges disabling mental conditions including depression, anxiety and social limitations. However, mental status examinations have consistently been within normal limits, with a normal mood and affect, normal speech, intact judgment and insight, and intact memory. AR 26, 436, 485, 865, 867, 869, 923, 929. There are also multiple notations in the record describing Plaintiff as calm, cooperative, and pleasant with normal behavior and good eye contact. *Id*.

There is substantial medical evidence to support the ALJ's finding that Plaintiff's mental impairments were not as disabling as Plaintiff claims. As such, the ALJ reasonably found that Plaintiff's allegations of debilitating limitations during the relevant time period are inconsistent with the medical evidence. The Court finds no legal error in the ALJ's conclusion regarding Plaintiff's credibility based on these inconsistencies.

### 3. The ALJ properly discredited Plaintiff's subjective complaints due to his activities of daily living.

As previously noted, Plaintiff alleges disabling physical impairment of his lower back, right knee, and both shoulders as well as disabling depression and anxiety. However, the ALJ found that Plaintiff's allegations of completely disabling limitations were belied by his daily activities. AR 24-25, 27. Activities

inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ noted that several of Plaintiff's activities of daily living do not correlate to the level of impairment he asserts. AR 24-25, 27. These activities include Plaintiff's ability to go shopping, walk to the bus stop, use public transportation, and attend college. AR 24-25, 355-59, 374-79. He was able to work on a commercial fishing boat in 2014, AR 25, 27, 664, 783, which requires physical and mental competency. Plaintiff is also able to cook and perform light housework such as laundry and cleaning. AR 24-25, 355-59, 374-79. He has the capacity to pay bills, count change, use a checkbook/money order, and handle a savings account. *Id.* Plaintiff reported that his hobbies include fishing, watching television, and playing chess. AR 24, 357. Contrary to Plaintiff's claims of disabling impairments, he reported no changes in these hobbies once his illnesses, injuries, or conditions began. *Id.* Spends time with others on a regular basis and does not have problems getting along with family, friends and neighbors. AR 24. 358.

Thus, the ALJ reasonably found that Plaintiff's daily activities contradict his allegations of total disability. The record supports the ALJ's determination that Plaintiff's conditions are not as limiting as he alleges.

### 4. The ALJ properly discredited Plaintiff's subjective complaints due to his failure to seek treatment.

In addition to the above reasons, the ALJ further found that Plaintiff's allegations of disabling limitations are inconsistent with the level of treatment he sought during the relevant time period. AR 28. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment … can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ pointed to multiple instances of Plaintiff's failure to seek out or comply with treatment. AR 28. For example, Plaintiff was noncompliant with treatment protocols on several occasions and was ultimately discharged from physical therapy due to his non-compliance. AR 28, 586, 710, 745, 999. He also failed to attend numerous appointments, including follow-up appointments after his ankle surgery. AR 28, 586, 710 745, 999. Further, Plaintiff declined remedial surgery for his shoulder because he was attending college at the time. AR 24, 501. Plaintiff's lack of treatment, failure to attend appointments, and ability to delay the

surgery for several months suggests that his impairments are not as disabling as he has indicated.

As such, the ALJ reasonably found that Plaintiff's failure to seek treatment throughout the relevant time period contradict his allegations of total disability.

The record supports the ALJ's determination that Plaintiff's conditions are not as limiting as he alleges. When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Here, the ALJ provided multiple reasons that are substantially supported by the record to explain the adverse credibility finding. The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

**B. The ALJ Did Not Err at Steps Four and Five of the Sequential Evaluation Process.**

**1. The ALJ properly assessed Plaintiff's residual functional capacity at step four.**

Plaintiff argues that his assessed residual functional capacity and the resulting step five assessment and finding did not account for all of his limitations.

Specifically, Plaintiff contends that the assessed residual functional capacity is incomplete for two reasons: (1) Because the ALJ did not properly consider all of Plaintiff's physical limitations; and (2) because the ALJ failed to create provisions for restrictions related to his mental health. ECF No. 13 at 15.

An ALJ may find that while a claimant is not capable of performing a full range of work at an exertional level (i.e., sedentary, light, or medium work), that a claimant has an exertional residual functional capacity that falls between two exertional levels. SSR 83-12. The ALJ pointed to several medical opinions and evidence to support her finding that Plaintiff has the residual functional capacity to perform light work with some exceptions. These exceptions account for Plaintiff's substantiated mental and physical limitations. AR 23-30.

For example, Arthur Lorber, M.D., testified at the first hearing as an impartial medical expert. 29, 51-109. Dr. Lorber reviewed Plaintiff's medical records from December 2011 through March 2015. *Id.* He opined that Plaintiff could perform a reduced range of sedentary work. *Id*. However, the ALJ assigned less weight to this opinion and more weight to the opinion of another impartial medical expert, Anthony Francis, M.D. AR 29. Unlike Dr. Lorber, Dr. Francis had an awareness of all the available medical evidence in the record. *Id*. Dr. Francis opined that Plaintiff was capable of performing light exertional work. AR 845-46, 854-55. The ALJ found that Dr. Francis' opinion was well supported by the record

as well as the Disability Determination Services consultants. AR 28. "The trier of fact and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Furthermore, the ALJ properly based the decision in part on the testimony of the vocational expert as required. *See Thomas*, 278 F.3d at 960 ("when a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy."); *see also Gamer v. Sec. of Health & Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987) ("The regulations do not state that a person of closely advancing age who cannot perform all types of light work is disabled. Nor do they state that a person unable to perform all types of light work is limited to sedentary work."). Thus, the ALJ did not err in finding Plaintiff capable of a reduced range or light work.

The Court has already found no error in the ALJ's treatment of the above disputed credibility determination, *see supra* at 9-17, nor the ALJ's reliance on the medical evidence in the record. Here, the ALJ's residual functional capacity findings properly incorporated the limitations identified by medical and other

sources. The ALJ's decision is supported by substantial evidence and the ALJ appropriately constructed Plaintiff's residual functional capacity.

### 2. The ALJ did not err at step five.

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work available in significant numbers in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012). If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Plaintiff very briefly argues that the hypothetical questions the ALJ provided to the vocational expert, Mr. Lear, based on Plaintiff's assessed residual functional capacity were incomplete because not every limitation suggested by Plaintiff was

//

//

//

included.[2] However, the ALJ specifically noted that she considered *all symptoms* in assessing the residual functional capacity. AR 23 (emphasis added). The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

While Plaintiff contends that the ALJ provided incomplete hypotheticals to Mr. Lear, he does not state what additional limitations he suffers or point to any assessed limitations from any medical source. The ALJ's determination is supported by the record. An alleged impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques and must be established by medical evidence not only by a plaintiff's statements regarding his symptoms. 20 C.F.R. §§ 404.1508, 416.908.

Here, the ALJ's residual functional capacity findings properly incorporated the limitations identified by medical and other sources. Thus, the ALJ properly

---

[2] Although not contested by Plaintiff, the Court notes conflicts between Mr. Lear's testimony and the Dictionary of Occupational Titles with regard to Plaintiff sitting, standing and reaching limitations. However, due to the conflict between the Dictionary of Occupational Titles and the vocational expert testimony, the ALJ is required to reconcile the inconsistency. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ adequately reconciled the inconsistency by explaining that the Dictionary of Occupational Titles does not address sit/stand options, nor do they differentiate between overhead reaching and reaching in all other directions. Further, Mr. Lear explained that his testimony in that regard was based on his knowledge and experience which included 10 years of vocational practice. Thus, the ALJ adequately reconciled the inconsistency.

assessed Plaintiff's residual functional capacity. The ALJ properly framed the hypothetical question addressed to the vocational expert and, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of Plaintiff, given his limitations.

Plaintiff also briefly contends that the ALJ erred by finding Plaintiff capable of substantial gainful activity. Again, the Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Thus, the Court finds the ALJ did not err in assessing Plaintiff's residual functional capacity, the ALJ's hypothetical to the VE was not incomplete, and the ALJ properly found Plaintiff to be capable of substantial gainful activity.

## VIII.  CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 29th day of March, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge